UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JUL 2 6 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 03-192-GWU

SHARON TUTTLE,                                                             PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this

3

expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Sharon Tuttle, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of discogenic and degenerative disorders of the back, a history of lumbar strain, psoriasis, a depressive disorder, and a personality disorder. (Tr. 15). Nevertheless, based in part on testimony from a vocational expert (VE), the ALJ determined that Mrs. Tuttle retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 16-18). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional impairments. (Tr. 256). She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally work overhead; (3) could not be exposed to a concentrated humidity or extreme cold; and (4) had a "limited but satisfactory" ability to relate to co-workers and deal with work stresses in an eight-hour workday and understand, remember, and carry out complex instructions. (Tr. 256-7). The VE responded that

such a person would be able to return to the plaintiff's past relevant work as a housekeeper and small products assembler. (Tr. 257).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to back and neck pain, joint stiffness, psoriasis, and anxiety attacks. (Tr. 44, 241-6). She testified that after injuring her back on her job as a cook at a nursing home, she had suffered from increasing low back pain, although she had returned to work for approximately 11 months, and her physician, a Dr. Pampati, eventually put her on restrictions to light work. (Tr. 249). However, her employer did not have work with such limitations, and she lost her job. (Tr. 250).

From a mental standpoint, the plaintiff was evaluated by two one-time examiners, Dr. Kevin Eggerman, a psychiatrist, and a psychologist, Reba Moore. The ALJ's restrictions are consistent with the findings of Dr. Eggerman (Tr. 186-7), although Reba Moore determined that the plaintiff would have almost the same limitations apart from a "seriously limited but not precluded" ability to deal with work stresses (Tr. 203-4, 209). Since they were both one-time examiners, the ALJ could reasonably have accepted the opinion of Dr. Eggerman over that of the psychologist.

Although some records from Dr. Jaya Pampati were submitted to the ALJ reflecting treatment for lower back pain and cervical spine pain, no clear restrictions

are contained in the notes. Dr. Pampati's physical evaluation in January, 2001, showed "mild" localized tenderness, with normal straight leg raising, and other, tests. (Tr. 166). X-rays of the lumbar spine showed mild degenerative arthritis. (Tr. 165). Dr. Pampati had also obtained a December, 2000 MRI of the cervical spine showing degenerative changes with hypertrophic spurring and some degree of spinal stenosis at C6-7. (Tr. 168). She diagnosed degenerative joint disease of the cervical spine with radiculopathy and degenerative joint disease of the lumbosacral spine with "symptoms suggestive" of radiculopathy. (Tr. 165).

Office notes from another physician, a Dr. Ducu, indicate that the plaintiff was treated for a lumbar and cervical strain after a fall on ice in January, 2000. (Tr. 153). X-rays of the lumbosacral spine showed only osteopenia. (Tr. 122). Although the plaintiff had follow-up visits over the rest of the year, and included complaints of other problems such as osteoarthritis of the knees, no functional restrictions are given. (Tr. 145-52).

A state agency physician, Dr. Timothy Gregg, examined the record on February 26, 2001 and concluded that the plaintiff could perform "medium" exertion with occasional climbing of ladders, ropes, and scaffolds and no more than "frequent" overhead reaching. (Tr. 170-5). In his opinion, there was no evidence of serious spinal pathology, and the plaintiff had no more than degenerative arthritis with a normal motor, sensory, and reflex examination and mild focal lower extremity

weakness. (Tr. 177-8). These restrictions are consistent with the ALJ's functional capacity assessment.

Subsequently, the plaintiff was examined by Dr. Gopal Rastogi, who found that she could bend forward only 30 degrees at the waist to but had a full range of motion of the neck, and also found no sensory or reflex deficits. (Tr. 179-80). He did not review any objective testing, but concluded that the plaintiff was "not fit for gainful employment." (Tr. 180).

Dr. William A. Reid saw the plaintiff on several occasions beginning in October, 2001, and found restrictions on movement of both the cervical and lumbar spine, with positive straight leg raising and generalized weakness over the shoulder muscles. (Tr. 221-to). He prescribed medication and suggested home exercises because the plaintiff could not afford physical therapy. (Tr. 222). He also obtained an MRI of the lumbosacral spine showing a "minimal" disc bulge at L5-S1 and mild degenerative changes at L4-5. (Tr. 219, 222). He did not suggest surgery but, due to the plaintiff's complaints of continuing right arm and hand pain, obtained an EMG, which showed no evidence of denervation. (Tr. 222, 225). Dr. Reid advised Mrs. Tuttle that there was nothing else he could offer her, and that she was at maximum medical improvement with a 19 percent impairment for worker's compensation purposes. (Tr. 222-3). He did not list any specific functional restrictions, however. He did subsequently write a letter in September, 2002 stating that, in his opinion, Mrs. Sutton was unable to perform any type of employment. (Tr. 227).

Tuttle

The ALJ rejected the opinions of Doctors Rastogi and Reid on the grounds that they were conclusory opinions of disability and not supported by objective evidence. Although Dr. Reid was a treating source, there is no evidence that he was sufficiently knowledgeable regarding vocational issues to determine if the plaintiff was unable to perform any jobs. The ALJ could reasonably have rejected the opinions of both physicians as being outside their field of expertise. Moreover, apart from the lumbar MRI (showing mild or minimally abnormal findings) and the normal EMG, much of the objective evidence was reviewed by Dr. Gregg, who did give a specific opinion regarding work limitations. It is also noteworthy that the plaintiff reportedly told Dr. Reid that Dr. Pampati had determined that she was capable of "light duty," which would be consistent both with Dr. Gregg and the ALJ's assessment. (Tr. 221). Thus, there is substantial evidence to support the administrative determination.

The decision will be affirmed.

This the  26  day of July, 2006.

G. WIX UNTHANK,
Senior Judge